IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JORDAN KEEFE,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN JIM SALMONSEN;<br>AUSTIN KNUDSEN, ATTORNEY<br>GENERAL OF THE STATE OF<br>MONTANA,<br><br>Respondents. | Cause No. CV 24-135-M-DWM<br><br><br>ORDER |

State pro se petitioner Jordan Keefe ("Keefe") filed an application under 28 U.S.C. § 2254, seeking habeas corpus relief. (Doc. 1.) Keefe was subsequently granted leave to proceed in forma pauperis. (Doc. 5 at 2, 10.) Keefe was also ordered to show cause as to why his petition should not be dismissed as time-barred and procedurally defaulted and was advised of the relevant legal standards. (*Id.* at 6–10.) Keefe timely responded. (Doc. 8.) Keefe's brother conventionally filed 254 pages of documents on Keefe's behalf in support of his response to the show cause order, although Keefe seems to believe his brother was filing only 92

1

pages of documents. *See generally*, (Doc. 6); *see also*, (Doc. 8 at 2)(referencing the "92 pages" of evidence brought forth in support of response).

Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts requires courts to examine the petition before ordering the respondent to file an answer or any other pleading. The petition must be summarily dismissed "[i]f it plainly appears from the face of the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." *Id.*

## I.     Background

Although the background of the underlying state court proceedings has been explained in prior orders, it will be briefly summarized herein, along with the proceedings that have occurred in the present matter.

### i.     State Court Proceedings

In March of 2015, following a guilty plea, Keefe was convicted of Sexual Intercourse without Consent in Montana's Twentieth Judicial District, Sanders County. (Doc. 1 at 2.) The District Court imposed a sentence of 10 years, with 5 of the years suspended. (*Id.* at 3.) The sentence was subsequently revoked.

Keefe previously attempted to challenge the same state judgment in a prior federal habeas action. *See, Keefe v. Salmonsen*, Cause No. CV-23-100-M-DLC, Or. (D. Mont. Sept. 18, 2023). There, Keefe advised that he had an active appeal pending from the state district court's denial of his postconviction petition in which

he was represented by counsel. *Id.* at 2. Keefe indicated that he intended to present his federal claims to the Montana Supreme Court in his appeal. *Id.* at 2-3. This Court explained to Keefe that it could only entertain a petition for federal habeas relief once a petitioner had exhausted his state court remedies and informed Keefe how he could properly meet the exhaustion requirement. *Id.* at 3-4. Specifically, Keefe was told he must present his claims "to the state courts, in a procedurally appropriate manner, and give them one full opportunity to review his federal constitutional claims." *Id.* at 4, citing *O'Sullivan*, 526 U.S. at 845. Keefe's federal petition was dismissed as unexhausted. (*Id.* at 6.)

In Keefe's direct appeal, however, the parties filed a stipulation and joint motion to dismiss pursuant to M. R. App. P. 16(5). *See, State v. Keefe*, Cause No. DA 22-0381, Or. (Mont. Oct. 19, 2023). The parties stipulated that the matter should be remanded to the Twentieth Judicial District Court, with instructions to amend the written judgment in DC-14-16, to reflect that Keefe be awarded an additional 25 days of credit toward his sentence. *Id.* at *1. The remainder of the appeal was dismissed with prejudice. *Id.* at *2.

Keefe then filed a petition for writ of mandamus with the Montana Supreme Court. There, he requested that a writ of mandate issue directing the District Court to grant an acquittal in his underlying criminal case and an "exoneration of criminal records." *See, Keefe v. Twentieth Jud. Dist.*, Cause No. OP 24-0532, Or.

3

(Mont. Sept. 25, 2024). Keefe claimed that his "[d]eath occurred on Feb. 18th 2022 & Jan. 22nd 2022 in County Jail in 'DOC' custody [through] Sanders County Sheriff's Office." *Id.* at *1. Keefe argued that following his death and revival, he should have been allowed to present exculpatory evidence and testimony showing that the State's witnesses lied in reports. *Id.* Keefe claimed he was entitled to a hearing and had been wrongfully denied all other legal remedies. *Id.*

The Court found that although it was unclear how the alleged events of 2022 connected to his 2015 conviction, Keefe failed to demonstrate a clear legal duty of the district court to provide him relief from the Sexual Intercourse without Consent conviction, or from the subsequent revocation of his suspended sentence. *Id.* at *2, citing*, Mont. Code Ann. § 27-26-102(1);[1] *Smith v. Missoula Co.*, 1999 MT 330, ¶ 28, 297 Mont. 368, 992 P. 2d 834. Accordingly, the Court was unable to provide Keefe the relief requested via the remedy of mandamus. The petition for writ of mandamus was denied and dismissed. *Id.*

    ii.    **§ 2254 Proceedings**

In his present petition, Keefe asserts: (1) newly discovered recantation of testimony by the alleged victim demonstrates violations of Keefe's right to due

---

[1] This statute provides: "A writ of mandamus may be issued by the supreme court or the district court or any judge of the district court to any lower tribunal, corporation, board, or person to compel the performance of an act that the law specially enjoins as a duty resulting from an office, trust, or station or to compel the admission of a party to the use and enjoyment of a right or office to which the party is entitled and from which the party is unlawfully precluded by the lower tribunal, corporation, board, or person."

4

process under the Fourteenth Amendment and right to confrontation under the Fifth Amendment, (doc. 1 at 4), and (2) trial counsel provided ineffective assistance, as evidenced by redaction of testimony, withheld evidence, actual innocence, and Keefe's entrapment. (*Id.* at 5.) Keefe asks this Court to order a full pardon relative to the 2015 conviction, award him monetary compensation from February 2009 to the present day, return his daughter to his custody, and issue indictments to the state officers involved in his underlying proceedings for purported federal violations. (*Id.* at 7.)

Keefe was advised that monetary damages are not available to prisoners in habeas actions. (Doc. 5 at 5.) It was further observed that Keefe's claims in the present petition appeared to be procedurally defaulted, because he failed to properly exhaust them in the state court system. (*Id.* at 6-8.) Keefe was also informed that any challenge to the 2015 conviction was filed nearly a decade too late. (*Id.* at 8-9.) Keefe was advised of the showings he would need to make to excuse the procedural hurdles. (*Id.* 6-10.) Keefe was also informed that to the extent he believed he had newly discovered evidence of innocence, in the form of a purported recantation, he would need to provide additional information regarding the content, nature, and timing the recantation. (*Id.* at 9.) Thus, Keefe was instructed on the showings he would need to make to excuse both his untimeliness and default.

Keefe's filing is largely unresponsive. Much like he argued in the Montana Supreme Court mandamus proceedings, Keefe asserts that he experienced serious bodily injury and "multiple deaths" while in state custody. (Doc. 8 at 2.) Keefe claims that within 1 year of obtaining "newly discovered exculpatory evidence" he exhausted his state remedies, (*id.* at 1), although he provides no further information about how he did so. He also references the "92 pages of documents" filed by his brother and suggests that this information supports the finding that a "fundamental miscarriage of justice" would occur if the merits of his claims were not considered. (*Id.*) Keefe then cites various federal statutes and caselaw that are unrelated to a federal habeas corpus proceeding. (*Id.* at 1-2.)

Because Keefe appears to primarily rely upon the exhibits, it is appropriate to summarize them. As an initial observation, the documents are not in a discernable logical or chronological order. Many of the documents within the filing are incomplete. Also included within the filing are pleadings and documents related Keefe's brother. *See*, (Doc. 6 at 6-8)(documents from a Thompson Falls City Court matter, *City v. Christiansen Lee Keefe*, TK 23-214); *see also*, (*Id.* at 132-65, 170-193, 202-06)(a 1997 evaluation and treatment progress notes for Christiansen Keefe).

The remaining documents, do relate to Keefe, but it is unclear how they support his response to the show cause order. Included in the filing are pleadings

6

and other documents associated with various legal matters. These include two Thompson Falls City Court cases: *State v. Keefe*, TK 08-221, involving a violation of an order of protection, (doc. 6 at 1-4, 10, 12-44), and *State v. Keefe*, No. 8052-08, involving a sexual assault, (*id.* at 11, 45-59.) Additional court documents include those related to the Sanders County Sexual Intercourse without Consent conviction handed down in DC 14-16, including a psychosexual evaluation performed by Dr. Robert Page, (*id.* at 9, 247-54), along with pleadings related to a petition for a temporary order of protection filed in *Hill v. Keefe*, 20-124, (*id.* at 60-6), and documents from a criminal case from the Bozeman Municipal Court, dealing with a violation of an order of protection, *State v. Keefe*, CR 08-0003. (*Id.* at 68-9.) Also provided is a time payment agreement Keefe entered into with the Thompson Falls City Court in 2009, but it is unclear with which case the document corresponds. (*Id.* at 131.)

Keefe also provides a significant amount of medical and mental health records. These documents include 2009 medical records from Community Medical Center, related to treatment for vertigo/anxiety. Also included is a discharge summary covering a hospital stay from 7/6/94 to 8/1/94. (*Id.* at 70-73.) Keefe submits various mental health records and evaluations, which include: a report from Associated Behavioral Health Care in Kent, Washington, covering treatment from November 2012 to December 2013, (*id.* at 74-87, 127-30), an

7

August 2002 report from Assessment and Psychotherapy Services in Bozeman, (*id.* at 88-90), a June 2002 psychiatric evaluation performed at AWARE Group Home in Bozeman, (*id.* at 91-102), a 2001 psychiatric evaluation performed at Children's Comprehensive Services of Montana and follow-up records, (*id.* at 103-112, 116-19, 120-25), a 2001 psychiatric evaluation and follow-up report, (*id.* at 113-15), 2011 records from Montana State Hospital at Warm Springs, (*id.* at 166-69, 194-95, 207-08, 221-29), partial records from 2010 and 2011 evaluations performed by Western Montana Mental Health, (*id.* at 196-201, 209-20), and a 2001 psychological evaluation performed by Auerhammer Psychological Services, (*id.* at 234-46.)

## II. Analysis

For the reasons explained below, Keefe's petition will be dismissed as untimely and procedurally defaulted.

### i. Statute of Limitations

Although he has not explicitly argued this Court should equitably toll the statute of limitations, *see e.g.*, *Holland v. Florida*, 560 U.S. 631, 649 (2010), the Court presumes that Keefe has provided all of the documents pertaining to his history of mental health issues in support of such a claim. This argument, however, is unavailing.

The equitable tolling test for mentally ill petitioners is provided in *Bills v.*

*Clark*, 628 F. 3d 1092 (9th Cir. 2010), which instructs that "eligibility for equitable tolling due to mental impairment requires the petitioner to meet a two-part test," *id.* at 1099:

> (1) First, a petition must show his mental impairment was an "extraordinary circumstance" beyond his control by demonstrating the impairment was so severe that either
>   (a) petitioner was unable rationally or factually to personally understand the need to timely file, or
>   (b) petitioner's mental state rendered him unable personally to prepare a habeas petition and effectuate its filing.
> (2) Second, the petitioner must show diligence in pursuing the claims to the extent he could understand them, but that the mental impairment made it impossible to meet the filing deadline under the totality of the circumstances, including reasonably available access to assistance.

*Id.* at 1099-1100 (citation omitted). Even if a petitioner "grapple[s] periodically with significant mental health issues during his incarceration," he can still be "capable of understanding the need to timely file and effectuat[e] a filing." *Orthel v. Yates*, 795 F. 3d 935, 939 (9th Cir. 2015).

In the instant matter, Keefe cannot satisfy the *Bills* test. The mental health records provided by Keefe all relate to time periods prior to his 2015 conviction and sentence. Thus, while it is apparent that Keefe has experienced and been treated for mental health issues in the past, the value of the records provided is limited because they do not correspond to the time period which is at issue in the present matter.

Moreover, the Court notes that Keefe has been a persistent and prolific filer

9

in this Court, including filing both civil rights cases and prior habeas petition in the period of time during which the statute of limitations in this matter lapsed. *See*: *Keefe v. MSP I.P.S. Officers et al.*, Cause No. CV 15-103-H-DLC-JT, Comp. (filed Nov. 20, 2015); *Keefe v. Kirkegard*, Cause No. CV 17-47-H-DLC, Comp. (filed April 18, 2017); *Keefe v. Montana*, Cause No. CV 17-92-H-BMM, Comp. (filed Sep. 11, 2017); *Keefe v. Fletcher*, Cause No. CV 17-136-M-DLC-JCL, Pet. (filed Sept. 25, 2017); *Keefe v. State et al.*, Cause No. CV 21-129-M-DWM, Comp. (filed Oct. 26, 2021); *Keefe v. Lieze et al.*, Cause No. CV 22-35-M-DLC, Comp. (filed Feb. 7, 2022); *Keefe v. Salmonsen*, Cause No. CV 23-107-M-DWM, Pet. (filed Aug. 23, 2023); and, *Keefe v. Salmonsen*, Cause No. CV 23-100-M-DLC, Pet. (filed Sep. 7, 2023). The Court's docket demonstrates that during the § 2254 window for filing his habeas petition challenging the 2015 judgment of conviction, Keefe had the ability to prepare and file a petition and, accordingly, he cannot meet the *Bills* test for equitable tolling. *See e.g., Gaston v. Palmer*, 417 F. 3d 1030, 1035 (9th Cir. 2005)(affirming denial of equitable tolling when evidence showed petition made filing both before and after his limitations period expired); *see also, Geray v. Muniz,* 678 F. App'x 607, 608 (9th Cir. 2017)(affirming denial of equitable tolling when impairment did not prevent petition from filing a variety of documents).

Thus, Keefe has failed to show a basis which would entitle him to equitable

tolling; his claims remain untimely.

### ii. Procedural Default

Keefe also appears to argue that there has been a recantation of testimony by the alleged victim, *see* (doc. 1 at 4-5.) Accordingly, the Court assumes Keefe believes he is innocent of Sexual Intercourse without Consent. As previously explained, a procedural default may be excused for a fundamental miscarriage of justice. *See, Cook v. Schriro,* 538 F. 3d 1000, 1028 (9th Cir. 2008). Such a showing is made when a petitioner can show that a constitutional violation probably caused the conviction of one innocent of the crime. *Smith v. Baldwin,* 510 F. 3d 1127, 1139.(9th Cir. 2007)(en banc). To be credible, however, "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence- whether it be exculpatory scientific evidence, trustworthy eye-witness accounts, or critical physical evidence- that was not presented at trial." *Schriro,* 538 F. 3d at 1028 (quoting *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

Notably, Keefe has not provided any exhibits or information related to the alleged recantation which would tend to establish that he is innocent of the offense of Sexual Intercourse without Consent and that no juror could find him guilty beyond a reasonable doubt. *See e.g., Holland,* 560 U.S. at 649; *Smith v. Baldwin,* 510 F.3d 1127, 1140 (9th Cir. 2007) (en banc). In fact, one of the documents provided by Keefe contains an admission from him that he engaged in

11

inappropriate sexual touching with the victim. *See*, Page Eval. (Doc. 6 at 250.)

Thus, Keefe has presented no new evidence which would establish his actual innocence. Instead, he provides his own conclusory statement regarding a purported recantation. He also suggests that he "died" twice in 2022 and these events should somehow permit him to renew his state proceedings. *See*, (Doc. 8 at 2.) Such showings are inadequate, however, for purposes of this Court's review. Keefe's assertions alone do not serve to set aside any procedural bars in this Court. The claims remain procedurally defaulted.

### iii. Conclusion

The claims contained in Keefe's petition are untimely and procedurally defaulted without excuse. Keefe has not demonstrated a valid basis to excuse his late filing or to set aside the procedural default. Accordingly, this matter will be dismissed with prejudice.

## III. Outstanding Motions

While the proceedings surrounding the statute of limitations and procedural default were occurring, Keefe has filed various motions and notices, the bulk of which find no support in law and/or are inappropriately filed in this federal habeas matter. For example, Keefe has filed a motion to challenge the constitutionality of the "state wide legislative body," (Doc. 14), and a motion directing the magistrate judge to perform his duty in investigating individuals engaged in an unidentified

state-wide "continuing criminal enterprise." (Doc. 16.) Similarly, he has filed a motion requesting a "three judge panel" be convened to challenge the Montana Legislative body as unconstitutional. (Doc. 18.) Keefe also has filed a motion to show cause and asks this Court to direct the Missoula Police Department produce photographs and images that were allegedly deleted, possibly from his cell phone, that relate to a purported conspiracy involving Montana, Idaho, Washington, Oregon, and Minnesota officials to kidnap his daughter and entrap Keefe in a criminal enterprise. (Doc. 27.) Keefe has also filed a motion seeking to notify the Court of ongoing violations committed by officials at Montana State Prison. (Doc. 26.)

Keefe's motions are not cognizable in these § 2254 habeas proceedings because he does not challenge the validity of his confinement or its duration. *See, Nettles v. Grounds*, 830 F.3d 922, 933-34 (9th Cir. 2016) (en banc). These motions which, if successful, will not necessarily lead to immediate or speedier release from custody falls outside the "core of habeas corpus" and must be pursued, if at all, in a civil rights action under 42 U.S.C. § 1983, rather than in a habeas action. *Nettles*, 830 F. 3d at 931.

Keefe has also filed a motion pursuant to Rule 60(b) asking this Court to review the state court judgments entered against him based upon newly discovered evidence and fraud. (Doc. 21). Rule 60(b) allows a "party" to seek relief from a

13

"final judgment, order or proceeding." The Rule applies only when a party to a federal lawsuit seeks suck relief. Federal court litigants unhappy with the outcome of a federal case may use Rule 60(b) to attempt to overturn a final federal judgment or request reopening of a lawsuit. *Gonzalez v. Crosby*, 545 U.S. 524, 528 (2005). This Rule may not, however, be used as a means to attack a state criminal judgment. *See e.g., Harris v. United States*, 367 F. 3d 74, 82 (2nd Cir. 2004)(a Rule 60(b)(6) motion that directly attacks an underlying conviction properly denied as beyond the scope of Rule 60(b)). Thus, a motion pursuant to Rule 60(b) is not an appropriate vehicle for Keefe's challenge to his state court criminal conviction and this Court lacks jurisdiction to entertain the motion.

Keefe also requests a jury trial in this matter. (Doc. 29.) While an evidentiary hearing may be warranted in § 2254 habeas proceedings, there is no provision for a trial by jury in these proceedings. *See e.g.*, Rule 8(a), Rules Governing § 2254 habeas proceedings.

Setting aside the lack of merit and/or lack of legal support in Keefe's filings, they are all moot in light of the dismissal of the § 2254 petition. Accordingly, all pending motions will be denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254

Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Gonzalez v. Thaler*, 656 U.S. 134, 140-41 (2012) (quoting *Slack*, 529 U.S. at 484).

Keefe has not made a substantial showing that he was deprived of a constitutional right. He has failed to make a colorable claim of equitable tolling or demonstrate the existence of a fundamental miscarriage of justice necessary to set aside the procedural default. Accordingly, his is petition is both procedurally defaulted and time barred. Reasonable jurists would find no basis to encourage further proceedings. A certificate of appealability will be denied.

Based on the foregoing, the Court enters the following:

## ORDER

1. Keefe's Petition (Doc. 1) is DISMISSED with prejudice.

2. All outstanding motions are DENIED as moot, in light of the dismissal of

this matter.

3. The Clerk of Court is directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

4. A certificate of appealability is DENIED.

DATED this 10th day of January, 2025.

_____  13:59 P.M.
Donald W. Molloy, District Judge
United States District Court